Case 24-2124, James Hart et al. v. Township of Presque Isle, MI. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Thank you very much. Good morning, Philip Ellison, appearing on behalf of the plaintiff, Appalese, in this case. I'm reserving three minutes for rebuttal. Your Honors, the court below, I think, made the fundamental error of missing the important Supreme Court case of Fuentes. Fuentes has explained as the body of law in due process that it is well settled that a temporary, non-final deprivation of property is nonetheless a deprivation in terms of the 14th Amendment and, by extension, the Due Process Clause. In Michigan, we have the Dawley Rule. And the Dawley Rule is when a government issues a permit, and that permit is relied upon by the permittee, and they act upon that for construction purposes. And they get to the point that the language of the... Doesn't it have to be a valid permit? Well, this is a valid permit. If you look at 26.3 of the Presque Isle Zoning Ordinance itself, Lange, as the administrator, had the authority to issue the permit. And that by issuing the permit, he made the conclusion that, and this is the line that comes right from this, is that he had inspected such plans and details and finds them to be in conformance with the ordinance itself. Does the ordinance require the scale drawing? The ordinance required... To the extent that the township was not enforcing it in that matter, that would be, at best, a waiver on the part of the township. The township gave its blessing with a permit. A permit is the blessing of the appropriate officer, whether it's a board or an individual, that you may proceed forward, that you have met all the requirements that we are enforcing under this particular ordinance. The person that's requesting the permit charged with knowledge of what it requires to get that permit, like knowing that you have to have a scale drawing. And I believe your client's builder didn't submit the scale drawing. So typically, what I would argue to this court is that when governments pass laws, I'm thinking of this like in a criminal context, it's against the law to speed, for example. And I'm caught speeding through I-75 down on the expressway in Michigan, and the charges are brought against me. The prosecutor has the choice, with the discretion, to enforce that law as it's written. It's up to them to decide how they're going to enforce that law as it's written. And I think that's the same case here, is that the zoning officer had a way that they felt that this was the way the law applied in these circumstances. He was the one responsible for both interpretation and enforcement of that. He said, you've checked all the boxes. You've done it, and I'm not only checking the boxes, I'm giving you the permit, and that permit explicitly under 26.3 says that you're in conformance. What we're trying to figure out is whether the permit is valid. Because the law clearly seems to say, if it's invalid, you don't establish a property right based on that. So that's why the emphasis is on whether it's valid. When you're asked if it's valid, you seem to answer by using waiver or estoppel theories. So if we could, for just a moment, put aside waiver and estoppel. The ordinance says what had to have accompanied the permit application. They submit a permit application for a 2,500 square foot house, and they clearly did not include a bunch of stuff that they were supposed to send in. Drawings, heights, how far away from the lake, all this kind of stuff. So if we don't analyze it based on waiver or estoppel, what should we look at to corroborate your conclusion that legally this was a valid permit? Two responses. One is my client, through his builder, did submit a drawing. There is a drawing in the record. It's rudimentary. I will grant you it's not a CAD level style. A scaled drawing. A scaled drawing, correct. He submitted... Which is what the requirement is. That's correct. This is, and if I could just take a half a step back, is in the zoning world, there's basically two forms of permit. There's a minor permit and a major permit. And that's the phrase in the business that we use. For building of houses, basic businesses, changes of front yards, things of that nature, we have a minor permit. The zoning officer is the one, typically, not always, but typically the one empowered to make that determination. The zoning ordinance required it to have elevations and topographical features. Did it have either of those? Did it have the lines to the details? No, it did not. It did not. But the scale drawing required... It wasn't a dimensioned plat or a plan drawn to scale, right? I would argue Mars did. It wasn't great, but it was there. Alright, so just assume for a second that we conclude that everything that was required to be submitted with the application for the permit was not submitted. So what cases do you rely upon to basically say, close enough, it was valid? Two responses. One is, I would point to the ordinance, the 26.3 of the zoning ordinance is one. Coupled with that is that this is what Pittsfield Township versus Macomb and Dowley both provide that when there's a reliance on a permit that's been issued, even if it's erroneously issued, and that's the Pittsfield case. The bottom line is you don't have a case that says that this is close enough. I do. Pittsfield. Pittsfield. Pittsfield. Yep. Pittsfield. I apologize, I wasn't clear on that. Pittsfield... The Estoppel case? Is that the... It is an Estoppel case. The property rights in Michigan, this is a valid... Michigan is unique as it has acknowledged an Estoppel right as a property right, which is unique. Some states don't, and I will be the first to acknowledge, some states don't acknowledge this theory, but if you look at... Did Pittsfield even talk about a vested property right? Yes. Yes, that was the Dogkennel case. That was the case where the zoning officer approved the permit and realized after the fact it was an error. And it violated the zoning ordinance. And it violated the zoning ordinance, correct. And the Supreme Court said, and again, it based it in Estoppel theory, but it's that same principle that comes from Dowley, which is reliance upon a permit that's been issued, even if in error. It's because at a certain point is that you don't get to undo that permit because at that point a vested right ripens. And in that case, the kennel had already been built, it had been operating as a dog kennel or whatever it was for several years, it had gotten the other things that they needed. Respectfully, no. It was at eight months. The kennel had just been completed and the kennel was, I don't know if it was fully operational yet, but it was within one year's time. Actually it was in... I think that applies here. I do. To a house that's only barely under construction. This house is, if you look at the photograph here, this is well beyond barely constructed. This is what we would call 75% constructed in this case. You have a photograph from August of 2021 where that house shows the status of the house at that time and the... Is that the picture that shows a lot of Tyvek on the outside of parts of it? Parts of it. It's got siding, it's got the windows in, it's got the foundation in, the walls are up, the roofs are on. Exhibit three. I pasted right into the brief itself, I believe, itself in there. And we actually have the acknowledgement of the zoning officer, Mr. Lang, on this acknowledging that's what the house looked like when he issued his stop work order in July of 2021. So that photograph is an accurate depiction of what it looked like at that point. And of course the important line that comes... ...legitimate concern about whether the permitting process had been correctly followed. And that seems to be a fair characterization here. Just tell me succinctly, what's the problem with a stop work order for what turned out to be a pretty short period of time... ...when there was notice and there was an opportunity for a hearing and there was a hearing? So... It was post deprivation in your theory, I get that. But of course Matthews permits, in many circumstances, post deprivation hearings as adequate for due process. If usually though it's only tied to emergency situations though. I mean that's the key, I think the key distinction that's there. And this was not an emergency situation. I'm issuing a stop work order because there's an unsafe building in this respect. The problem that I'm succinctly trying to get to in this case is... ...and this happens and it's unfair to a property owner or a builder who thinks they've done everything right. The appropriate official has said you've done everything right. I'm giving you a permit. They're not violating the permit itself and in fact the building itself... ...and it's undisputed on this record that the building itself complied with all of the zoning ordinances... ...and all the requirements that existed. It's that the zoning officer didn't do his job correctly in the beginning. For which you have a constitutional claim. For which we have a constitutional claim that you can't because Michigan recognizes... ...this is what makes this case I think unique and I'm excited about to be here for... ...that Dawley actually provides and the line it says... ...this is the line I think is the most important part of this is... ...there would be no question as to his vested property rights when sufficient work... ...of a substantial character has been undertaken. And of course you have the series of your Algoma case, your Pittsfield case, your Dawley itself has explained... ...basically once you get past land clearing and you start building you have a vested right. Once you have that and it's not just a vested like theoretical right, it's a vested as Dawley explains... ...property right. And I want to go back to where I started was with Fuentes and Fuentes says it's well settled... ...from the U.S. Supreme Court that a temporary non-final deprivation of property is nonetheless a deprivation. How I would try to explain this I think best to this panel would be is that in June of 2020... ...or July, we had that date discrepancy obviously, but in 2020, the summer of 2020... ...my client applied for a permit and was granted a permit where the zoning officer said you're in conformance... ...with everything. And they start building. Think of that as a red property stick at that point. In July of 2021, one year later, they've come back and said we want to take that red property stick from you. And we're going to do it without giving you the chance to be heard first including to be able to make these... ...kinds of arguments about vested rights. They took that right away. Even if it's temporary and non-final, the Supreme Court says that's covered by due process. You've got to give notice and the opportunity to be heard. Now Matthew says you have lots of ways you can do it. We give you flexibility to figure out what due process you want to get, but not the questions if there's due process. There's no if anymore. Fuentes says no if. The how is where you have the flexibility. Now the second step when you have the hearing in August, that is the question about whether they're going to... ...permanently deprive the person of that right. And we're not saying if they're trying to permanently deprive that there was a due process because they had due process. But at the point that they took away that red stick, we're arguing that that was a taking. And of course what happens is my client then reapplies. They're not getting, when they reapply, they don't get the red stick back. They're now given a green stick. A separate permit. A separate property right that comes into place. So we're here suing today about the red property stick that you temporarily took without due process... ...and you permanently took from us as a taking. You've mentioned City of Lansing v. Dowley quite a few times. I have. And I'll have to go back and look. But from your perspective, does Dowley address what is a valid versus an invalid permit? Or does Dowley simply assume in that case it was a valid permit? So I will go one step further. No case has explained what constitutes a valid or invalid permit in Michigan. And what I would advocate to the court is if a valid permit would be something along the lines of if my client had committed fraud, for example. Lied about... So what you want us to do is you want us to essentially extend Dowley by fleshing out what is a valid permit. I would like, no, what I'm arguing in this case, what I'm arguing in this case, I think I would frame it as respectfully, is that Pittsfield provides that when a government issues a permit and gives the clearance, gives the okay, and a person starts building and has spent hundreds of thousands of dollars in reliance on that permit, you can't just come in and take that property right away without due process. Does Pittsfield elaborate on what is a valid versus an invalid permit? It does not use the word valid or invalid. There is no case, as I've just said. Let's assume there is no case. Where would you suggest we go to determine whether you're right or your friend is right, whether this permit was valid? Pittsfield. Which you just told me doesn't discuss... Pittsfield. It doesn't say it directly, but Pittsfield provides the principle, the framework that is thinking that would help this court. Okay. That's helpful. Thank you. Yep. Unless the court has any other questions. Thank you. May it please the court, Judge Mathis, Brad Wirta, appearing on behalf of the Appali Presque Hill Township in this case. Let me go immediately to the question of whether the permit needs to be valid. I direct your attention to the Beeman versus Michigan Board of Pharmacy case that the district court judge relied on. In Beeman, the state of Michigan issued certificates to practice pharmacy to a number of different pharmacists. And those pharmacists then practiced in the area of pharmacy for what the court describes as substantially their entire professional lives. At the end of that period of time, the state discovered that they should not have issued those certificates to practice pharmacy. And the plaintiff pharmacists in that case argued that the issuance of the certificates to practice pharmacy, along with their many years of practice, gave them a vested right to practice pharmacy in this case. And that's the identical argument that's being made here. That an invalid permit that's erroneously issued, along with work constructing the home, gives you a vested right. But the Michigan Supreme Court in Beeman rejected that argument. And they said that the pharmacist, quote, could not have and did not acquire vested rights in consequence of there having been issued to them certificates of registration in violation of the law. We suggest that that court is directly on point on that particular issue, even though it isn't specifically a building permit or a land use permit case. We can't find a building permit or a land use permit case that's directly on that point from the state of Michigan. There are a number of out-of-jurisdiction cases that have specifically addressed that issue. And again, this is at page 16 of our brief. It's a quote directly from the district court's opinion. It cites to about six or seven different jurisdictions where that very question was raised. Did those pharmacists ever get their certificate back later in, like, this temporary one here? I don't believe that the case reveals that, although it's – I mean, I would think it would be a lot worse to lose your pharmacy license permanently than to have 70 days of stopped work. Your Honor, I think that's directly right, and I would point out in that respect that this is an entire case where you have a township zoning administrator who is proactively trying to work with the homeowners with the construction of their case. And so he goes to them almost immediately at the point where he realizes he's made a mistake in issuing this permit and says, hey, just reapply for a permit, and this time include all of the information and all of the drawings that are required under our township zoning ordinance. They eventually do that after a number of different other things, but they eventually do that, and what happens? They again make a mistake in terms of what they submit, and the zoning administrator then gives them a detailed letter saying you need A, B, C, D, E, and F, those things that you discussed earlier, scale on your map, topographical elevations, buildings, et cetera. They submit that, and then they get the permit, and they're able to resume construction. Nonetheless, we're here defending this federal court lawsuit. Your adversary starts out by saying that the district court's problem was a completely overlooked Fuentes. Do you have a response to that? I didn't see a cite to Fuentes in your brief. I was surprised to hear that. By the time the appellant in this case has submitted their appellant's brief and their reply brief, it's the fifth time that they've briefed the issue, and candidly, the arguments have just changed throughout. Fuentes has absolutely nothing to do with whether a valid building permit, whether an invalid building permit provides a vested right in this case, and so I don't have a comment on Fuentes. I thought Fuentes went more to the issue of there must be a pre-deprivation hearing. The plaintiff really has argued throughout this that there's a black letter law, that you have to have a pre-deprivation hearing any time a stock work order issues. That's been their argument from the start of this case. As the district court's opinion pointed out, and as we've cited in our brief, there are many, many cases that say just the opposite of that, including the Matthews v. Eldridge case, which specifically highlights that due process is a flexible concept and that you look at all of the factors in terms of determining whether due process was granted. In this case, including post-deprivation process that was provided. There's also a Sixth Circuit Court case, Paith v. Worth Township, from 2012, that we'd suggest is very similar and directly on point, where you had a property owner who was doing a remodel of a property. A land use permit was issued, and approximately two years later, they found out that the land use permit was issued in error, and at that point in time, they went and revoked the land use permit. A similar claim was brought, and the Sixth Circuit said, no, that is not a valid procedural due process claim because you were provided with adequate constitutional due process in this case. And so we'd suggest that Paith is directly on point in that respect. I guess I'd also just highlight for the court that in this case, as you've noted right from the beginning, it was the Zoning Board of Appeals that ultimately revoked the permit in this case. And that happened after the Harts were provided with notice of a Zoning Board of Appeals hearing. They retained an attorney. Their attorney submitted a lengthy written legal brief to the ZBA in advance of the hearing, and then the Harts and their attorney appeared at the ZBA hearing. It lasted for two hours while the Harts and their attorney were allowed to offer whatever evidence they wanted to offer and to make whatever arguments they wanted to make for as long as they wanted to make them prior to the ZBA correctly determining that their application was deficient because it didn't include all of the required information. And again, that's something that at this point in time, the Harts acknowledge. They acknowledge that their application for the land use permit did not include all of the information it was required to include. I also find it interesting in terms of the taking claim. This is not a categorical taking. It's not a case where there was any physical invasion, certainly not a permanent physical invasion of the property. Similarly, it's not a case where the Harts were denied all economically beneficial use of their land. And so you get to the Penn Central factors. And yet again, after five times briefing these issues, the Harts have never said to the court, look, these are the Penn Central factors. I'm going to analyze them under the facts of this case, and I'm going to tell you why the Penn Central factors say that there's a taking in this case. We've done that. It's in our brief. I don't need to redo it. But time and time again, the Harts in this case have failed to address what are, in fact, the tests that are clearly the governing tests on the issues of taking and due process. And they've simply suggested, hey, this case, previously it was the Kalkman case, an unpublished Michigan Court of Appeals case, which they said, this is our one case on which we base our takings claim. They initially cited it for their due process claim as well, even though it's not a due process claim in any way. But again, I would just point out that there are tests that are involved, both pursuant to Matthews and pursuant to Penn Central in this case, that we've analyzed and the district court judge analyzed. And under those tests, which haven't even been addressed by the Harts, that summary judgment was appropriately issued by the district court. So unless there are any other questions, we'll ask that you affirm the ruling of the district court. Thank you, Kevin. Thank you, Ronald. Very briefly, I would like to acknowledge that Brother Counsel did not contest that my clients had a property right that had ripened by July of 2021 when the SOP work order issued. I mean, we've heard that we talk about the length, we talk about we try to analogize to these different cases this way, but the reality is that there is a property right, and that has not been rebutted or opposed. The court case that they cite to is Beamon, and Beamon was a pharmacy licensing case. It's distinguishable because the Michigan Supreme Court has held, which states get to decide what property rights are, Beamon says you don't have a property right in your pharmacy license. Dowley and Pittsfield says you do have a property right and a vested right when you've acted in reliance upon an issued permit. You're conveniently omitting the word valid when you make that statement. My position, however, I guess, and maybe that might be the first bridge that this court needs to cross, is to say when a government official is specifically in furtherance and based on section, this is the most, I think, a really important section the court needs to look at is section 26.3 of the zoning ordinance, he reviewed it. He is the decider, the zoning administrator, is the decider of whether the application submitted by a person is in compliance with the ordinance or not, and he decided it was. The fault here keeps falling to the hearts for some reason. The fault here lies in this township official in approving a permit that if he should not have issued, he should not have issued. Once you've crossed that line, you don't get to call it back once reliance has been made on that because Dowley explains to the court. I think it's really interesting in your position there that a homeowner that wants to build a house is going to hire a builder as a practical matter. The builder is the one that then goes in the normal course, goes to get the permit. Is that correct? That's correct. The builder is supposed to be aware of what the zoning is and the permit requirements are and all the things the builder has to get done to start the project. Would that be fair to say? That would be fair. It's easy to blame the township, and I understand that. I'm not being critical of that, but you're just omitting the role of the builder. The builder should have known what he was supposed to submit. Even when he was told he didn't submit the right stuff the second time around, he still screwed it up. So the first time around was the builder submitted the first round of permits. I should say permits, applications requesting for the permit, and the zoning officer granted them. The application was for a 2,500-square-foot house. That's what the application that you're referring to says. That is correct, and the house is 2,500 square feet itself. The actual physical house itself. The permit says it's just shy of 12,000 square feet. That's what the permit says. The house is not 12,000 square feet. It's a big house. It's not 12,000 square feet. It's not a museum. What's connected to that is a large garage that's hooked to that there, and it's a multiple-layer house. It's a very tall house. It's three stories tall. More than 30 feet high. No, it's actually at, with the way the building laws work, it's actually at 30. It's called mean height. It's actually right at the 30-foot mean height level, and that was actually the issue that came up in one of the subsequent, the actual case that was in the state court. The state court said, nope, you're within the requirements there. So if I may have just wondered. That's what you really want us to do, so I'll give you a shot at saying this is right or wrong. Okay. You want us to constitutionalize the issuance of a stop work order. If it doesn't involve an emergency, something life and safety thing, and or have a pre-deprivation hearing. You want us to say that under the United States Constitution, anything short of that is a constitutional violation. I think that cuts right to the bone of it. Exactly right. Stop work order should be, because it's a non-final temporary deprivation, Fuentes says, the Supreme Court has told us in Fuentes, you have to give some form of due process. And you don't have any case that addresses a stop work order in connection with an arguably valid or invalid permit. There has been no, and that's what I like, that's what I mentioned a moment ago, excited about this case. This stop work order has not received attention from federal appellate courts that I think it should. Since Michigan, since the property rights are Michigan property rights, query, have Michigan courts addressed it? They have not. They have not. And if the property rights are created by state law, and they haven't addressed it, then why shouldn't we just say, it hasn't been created? Because it has been created under Dowley and Pittsfield. Okay, so you have the property. Michigan judges should analyze Dowley and Pittsfield. You have the property right. Michigan judges have. The courts have said there is a property right. And, in fact, the phrase they use is without question. The question that this court is being called upon to ask Judge McKee, as you exactly say, with that property right, is there a responsibility to offer a pre-deprivation notice and opportunity before you're temporarily or non-finally deprived of that property? And Fuentes tells us, yes. Just a very quick follow-up because we're way over time here. I'm just curious what the difference in the outcome would have been had you had a pre-deprivation hearing, which is what you're really complaining about, when you got a post-deprivation hearing, and you got the permit, and you finished the house. Because we could have made that argument about the vested rights that we ultimately believe we would prevail on would have been awarded by the zoning officer without shutting down for the three, four months that it was shut down, which then ballooned into 21 months thereafter. The whole point is to keep working. That's correct. Correct. That's exactly right. Thank you very much.